[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**No. 26-5113**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

THE NEW YORK TIMES COMPANY, *et al.*,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF DEFENSE, *et al.*,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the District of Columbia

_____

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY
PENDING APPEAL**

_____

BRETT A. SHUMATE
  *Assistant Attorney General*

YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney
  General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
SARAH WELCH
JACK STARCHER
  *Attorneys*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-8877*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 1

ARGUMENT.............................................................................................. 3

   I.  The Government Is Likely to Prevail on the Merits. ............................. 3

   II  The Remaining Factors Favor a Stay. ..................................................... 10

CONCLUSION ......................................................................................... 14

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

The district court issued an order requiring the Department of War to allow journalists to enter and roam the Pentagon unescorted, contrary to the Department's neutral and generally applicable access rules. The court issued that order without concluding that the Department's restrictions on unescorted access violated any constitutional right (because they obviously do not). Instead, the court enjoined the new physical access restrictions because it concluded they were implemented in part as a response to the court's earlier injunction preventing the Department from implementing *different* policies related to the *revocation of press credentials*. As explained in the government's motion, that shocking intrusion into the Department's judgments about how best to operate and protect the Pentagon cannot stand and should be stayed pending appeal.

In response, plaintiffs repeat the district court's errors. Plaintiffs focus on the fact that the court ordered the Department to reinstate the press credentials for seven named journalists. But there is no dispute that the Department *did* reinstate those credentials. Undeterred, plaintiffs insist that the Department nevertheless violated the court's order because the court's order implicitly forbade any future action that in any way altered

the level of physical access to the Pentagon those credentials previously carried.  That position is wrong many times over.  Plaintiffs never asked for an injunction anything like what they now claim they received; the order the court purported to enforce says nothing about barring future, different-in-kind changes to Department policies; and the court had no authority to issue an injunction forever preventing the Department from achieving its legitimate security objectives in ways that are lawful.  When an injunction is premised on prohibiting unconstitutional viewpoint discrimination and vagueness, the government complies with that injunction if it adopts a clear policy that applies equally to everyone.  The Department is therefore exceedingly likely to succeed in showing that (at least) that aspect of the court's decision was wrong.

Requiring the Department to allow journalists to have unescorted access to the Pentagon also imposes clear, immediate harm.  The Department has concluded that unescorted access to the Pentagon materially increases the risk that sensitive information, including classified national security information, will become public.  The district court's order supersedes those judgments and requires the Department to maintain physical access policies that it no longer finds sufficient to protect

those national security interests.  The Department's motion should be granted.  At a minimum, this Court should grant an additional two-week administrative stay to allow the Department the opportunity to seek orderly relief from the Supreme Court.

## ARGUMENT

### I.     The Government Is Likely to Prevail on the Merits.

1.     Plaintiffs' argument that the Department's new physical access policy violated the district court's order is meritless.  Start with what the order actually says.  As plaintiffs acknowledge, Resp. 10, the summary judgment order enjoins and declares unlawful certain enumerated provisions of the Department's October 2025 policy, none of which had anything to do with physical access.  The order then also requires the Department to "immediately reinstate the PFACs" of seven named New York Times reporters.  Mot. Attach. A, at 4 (Summ J. Order).  The undisputed record reflects that all seven of those reporters had their PFACs reinstated within days.  By "immediately reinstat[ing]" those PFACs, the Department fully complied with that aspect of the court's order.

Plaintiffs contend that the Department nonetheless failed to comply because it gave them "a useless card with the word 'PFAC' on it," Resp. 11,

3

but that is factually baseless.  As explained in sworn declarations, PFACs grant holders significant benefits—including the right to readily enter the Pentagon *with* an escort.  *See* Suppl. Valdez Decl. ¶¶ 22-27 (Dkt. 46).

Plaintiffs are thus reduced to arguing that, even though the order is silent about future changes to the privileges conferred on PFAC holders, isolated phrases and sentences from the district court's *opinion* mean the order must be read to implicitly contain a restriction on any such changes.[1] In other words, plaintiffs' position is that the summary judgment order they received confers on them an unstated, permanent right to enjoy in perpetuity exactly the benefits that their press credentials conferred on them before October 2025.  And that right is unique to plaintiffs.  Even if the Department makes uniform, unquestionably lawful changes to its PFAC policies that apply equally to all other PFAC holders, plaintiffs seem to think that the order they received—requiring the Department to reinstate their credentials—gives them the right to exempt themselves from those changes.  That theory suffers from several flaws.

---

[1] Plaintiffs' suggestion that the Department "forfeit[ed]" any argument about the district court's analysis with respect to reinstatement of press credentials, Resp. 11, is meritless, *see* Mot. 9, 14-18.

4

First, and most fundamentally, the order says nothing about physical access policies, nor does it contain any language suggesting that the Department was prohibited from altering the kind of access or privileges it gives to all PFAC holders. That alone is dispositive. *See* Fed. R. Civ. P. 65(d)(1) ("[e]very order granting an injunction" must "describe in reasonable detail … the act or acts restrained or required"). As noted, the relevant provision only requires that the Department reinstate the PFACs of the enumerated journalists—not that the rights associated with those PFACs are frozen in time forever. The district court's order references the October 2025 policy only to describe the universe of reporters covered by the order, and does not suggest that the court required the Department to forever maintain exactly the same press policies that existed before that date. Summ. J. Order 3 (ordering reinstatement of PFACs to seven journalists, "all of whom held a PFAC as of October 6, 2025"). It should be no surprise to plaintiffs that the injunction they received did not contain additional language prohibiting the Department from changing its press policies or altering the bundle of privileges enjoyed by PFAC holders as of October 2025: Plaintiffs did not ask for any such injunctive relief in their

5

complaint, Dkt. 1, at 39, or in the proposed order they asked the court to enter, Dkt. 10-2, at 1-2.

Second, and relatedly, plaintiffs litigated this case on the assumption that the reinstated PFACs would be subject to different rules than the PFACs plaintiffs held before the October 2025 policy issued. That is because plaintiffs never asked for an injunction against the October 2025 policy in its entirety. They sought only to enjoin certain enumerated provisions of that policy, thereby leaving the remainder in effect. The district court's order was similarly limited, declaring unconstitutional and enjoining only specific sentences from the October 2025 policy. Summ. J. Order 1-2. It was therefore clear from the outset that plaintiffs' reinstated PFACs would be subject to a different policy than the one that existed before October 2025.

Finally, plaintiffs' proposed reading of the injunction bears no relation to the nature of the violations the district court found. As explained in the Department's motion, the physical access policies do not implicate any of the supposed constitutional defects the court identified. Mot. 11-13, 17-18. Plaintiffs offer no response to cases holding that it is "logical and precedented" for an agency to take post-injunctive corrective

action, and that it does not violate the injunction by doing so.  Mot. 16

(quoting *NAACP v. Donovan*, 737 F.3d 67, 72 (D.C. Cir. 1984)).  That is so

even when the corrective action is taken in direct response to the court's

order, or where the action is taken to achieve the same objectives as the

enjoined action or diminish the effects of the court's order.  Indeed, the

Supreme Court has so-held even where the injunction prevents the

government from engaging in discriminatory, unconstitutional conduct

and the government responds by refusing to offer the underlying benefits

to anyone.  *See Palmer v. Thompson*, 403 U.S. 217, 220-22 (1971) (city did not

violate Equal Protection Clause when it responded to order forbidding

segregated public pools by closing pools entirely).

Plaintiffs rely on the fact that the district court's summary judgment

opinion noted, in assessing plaintiffs' harms and entitlement to injunctive

relief, that "[t]he only way to remedy the injury from the loss of a press

credential is to return the hard pass and the access that comes with it."

Resp. 10 (quoting Mot. Attach. B, at 37).  For starters, even that language

does not help plaintiffs: the Department returned their credentials, and

plaintiffs enjoy the same nondiscriminatory "access that comes with" those

credentials as every other PFAC holder.  But in any event, the court's

assessment of the harms cannot be abstracted from the constitutional violations the court found.  Mot. 15-16.  The harm that plaintiffs experienced was not the loss of their press credentials in the abstract, but the loss of those credentials *pursuant to* policies that the court found to be unconstitutional.  Those conclusions thus say nothing about a lawful future change to policy; even if such a change may inflict "harm," plaintiffs are not excused from the threshold requirement of showing that policy is unlawful before obtaining redress.

2.      Plaintiffs offer no serious argument that the new physical access policy is unconstitutional, instead asserting that the lawfulness of the policy is "irrelevant."  Resp. 12.  For the reasons already given above, *supra* pp. 3-8, plaintiffs' assertion that the district court enjoined (or could enjoin) all future, lawful policy changes that in any way diminish the privileges associated with Pentagon press credentials is meritless.

Plaintiffs suggest in passing that the physical access restrictions are unlawful because they were adopted "arbitrarily, unreasonably, or for an improper purpose."  Resp. 12.  To the extent plaintiffs' reference to some "arbitrary" or "unreasonable" government action means to inject a new Administrative Procedure Act argument into the case at this stage, that

only underscores how far afield plaintiffs' challenges to the physical access policy have strayed from the constitutional arguments the district court addressed in its summary judgment decision.

As for plaintiffs' unadorned suggestion that the physical access policy is unconstitutional, that suggestion cannot support the order here: the district court did not hold that the new policy was in any way unconstitutional. More generally, plaintiffs do not dispute that they have no constitutional right of special access to government facilities beyond that afforded to the general public. *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972). Even assuming the Pentagon were viewed as a forum, this Court has recognized that the established rule for non-public forums like federal office buildings is that the government can forbid access entirely or place restrictions on access "as long as the restrictions are viewpoint neutral and reasonable." *Ateba v. Leavitt*, 133 F.4th 114, 123 (D.C. Cir. 2025) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)). That rule is dispositive here: There is no question that the physical access policies are viewpoint neutral and that it is reasonable for government buildings not to allow reporters unescorted access. In particular, the escort requirement mitigates the risk of unauthorized disclosures, which is

9

presumably why judges don't allow reporters unescorted access to their chambers either.

## II.    The Remaining Factors Favor a Stay.

As explained in the Department's motion, mandating unescorted access to the Pentagon contravenes the Department's judgment that such access materially increased the risk that sensitive information, including classified information, was reaching journalists.  Wilson Decl. ¶¶ 4-6 (Dkt. 58-1).  And by enjoining the Department's new physical access policy, the district court's order will "almost certainly" lead to the patterns of conduct that, in the Department's judgment, led to the unauthorized disclosure of sensitive information in the past.  *Id.* ¶¶ 14-16.

Plaintiffs respond to the harms set out in the Wilson declaration by suggesting that this Court should disregard the declaration altogether because it was submitted after the district court issued the order at issue in this motion.  Resp. 13 n.2 (claiming this Court "cannot" consider the declaration for "any … purpose").  That is wrong.  The Department obviously could not have submitted a declaration explaining the irreparable harms caused by the court's order until after that order existed.  And courts regularly consider post-order declarations submitted to

10

substantiate the irreparable harms that an order would cause absent a stay pending appeal. *See, e.g.*, Order at 2, *Austin v. U.S. Navy Seals 1-6*, No. 21A477 (U.S. Mar. 25, 2022) (Kavanaugh, J., concurring) (citing declaration of Admiral William); *id.* at 1 n.1 (Alito, J., dissenting) (citing declaration of Thomas Homan).

Plaintiffs alternatively try to minimize the Department's harms by attacking the Department's judgment on matters of national security. Resp. 15-17. But as this Court has repeatedly made clear, that kind of second-guessing is impermissible in the context of the "Department's judgments on matters involving national security." Stay Order, *Anthropic PBC v. Department of War*, No. 26-1049 (D.C. Cir. Apr. 8, 2026) (per curiam). Plaintiffs' arguments on this score boil down to exactly the kind of "searching judicial review" that this Court has found "unwise to undertake" when evaluating "executive affidavits predicting harm to the national security." *Center for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003).

Plaintiffs' attempts to rely on findings the district court made at the summary judgment stage are also misguided. *See* Resp. 14. Uniform changes to the Department's physical access policies for reporters were not

11

at issue at all in summary judgment briefing. Neither the district court nor the parties had any occasion to address the information security concerns associated with PFAC holders' unescorted access to the Pentagon. The court's summary-judgment findings about "safety or security risks to Department property or personnel," Resp. 4, 7; Amicus Br. 9, are similarly inapposite. The access policy is driven by concerns about unauthorized disclosure of sensitive information, not the physical safety of "Department property or personnel."

Nor does it matter that the Department's new physical access policy departs from the previous policy, or that the previous policy had existed for years. Resp. 14-15. As explained in the Department's declaration, the new policy reflects different judgments about the security of the Pentagon and how best to address concerns about the public dissemination of sensitive information. Particularly in the realm of national security, the Department is allowed to reassess its policies and to determine that old physical access policies were not sufficiently protective.

On the other side of the ledger, plaintiffs claim that they suffer harms through lost "opportunities to ask questions, confirm information, obtain the Department's perspective, and receive timely updates about military

12

actions across the globe." Resp. 18. But the undisputed record belies that asserted harm: Plaintiffs have the ability to access the Pentagon to perform all of those journalistic activities *with an escort*. *See* Suppl. Valdez Decl. ¶¶ 18, 20-21, 25-27 (Dkt. 46). And the physical access policy has no effect on plaintiffs' ability to "ask questions," "receive timely updates," and the like via a phone call or email. *See* Resp. 17 (acknowledging policy has not prevented Times's reporters from reporting on Department matters). That plaintiffs would prefer to have unescorted access to the Pentagon to perform those tasks does not establish any irreparable harm. This Court's decision in *Ateba v. Leavitt* is directly on point on that score: The Court held that a journalist was not harmed by delays in obtaining a pass that would afford him unescorted access to the White House because he could obtain escorted access in the interim. *Ateba*, 133 F.4th at 117, 127.

## CONCLUSION

This Court should stay the district court's order barring enforcement

of the physical access policy pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

BRAD HINSHELWOOD
SARAH WELCH
*/s/ Jack Starcher*
JACK STARCHER
*Attorneys*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-8877*

14

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,566 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Book Antiqua, a proportionally spaced typeface.

*/s/ Jack Starcher*
Jack Starcher